IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LORI L. YOUNG, | : | 3:12-cv-1712 |
| | : | |
| Plaintiff, | : | |
| v. | : | Hon. John E. Jones III |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social | : | |
| Security, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

**February 11, 2014**

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Lori L. Young's ("Plaintiff" or "Young") claim for disability benefits under Title II of the Social Security Act. The administrative record has been submitted and the issues have been briefed by the parties. (Docs. 5, 6, 7). Accordingly, this matter is ripe for our review. For the reasons that follow, we shall affirm the decision of the Commissioner.

**I.   STANDARD OF REVIEW**

When considering a social security appeal, we have plenary review of all legal issues decided by the Commissioner. *See Poulos v. Commissioner of Social Security,* 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Commissioner of Social*

*Sec. Admin.,* 181 F.3d 429, 431 (3d Cir. 1999); *Krysztoforski v. Chater,* 55 F.3d 857, 858 (3d Cir. 1995). However, our review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence." *Id.; Brown v. Bowen,* 845 F.2d 1211, 1213 (3d Cir. 1988); *Mason v. Shalala,* 994 F.2d 1058, 1064 (3d Cir. 1993). Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); *Fargnoli v. Massanari,* 247 F.3d 34, 38 (3d Cir. 2001)("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); *Cotter v. Harris,* 642 F.2d 700, 704 (3d Cir. 1981)("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence."); *Keefe v. Shalala,* 71 F.3d 1060, 1062 (2d Cir. 1995); *Mastro v. Apfel,* 270 F.3d 171, 176 (4th Cir. 2001); *Martin v. Sullivan,* 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

    Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood,* 487 U.S. 552, 565 (1988)(quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229 (1938)); *Johnson v. Commissioner of Social Security,* 529 F.3d 198, 200 (3d Cir. 2008);

*Hartranft v. Apfel,* 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. *Brown,* 845 F.2d at 1213. In an adequately developed factual record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Federal Maritime Commission,* 383 U.S. 607, 620 (1966). Substantial evidence exists only "in relationship to all the other evidence in the record," *Cotter,* 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. N.L.R.B.,* 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason,* 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Johnson,* 529 F.3d at 203; *Cotter,* 642 F.2d at 706-707. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. *Smith v. Califano,* 637 F.2d 968, 970 (3d Cir. 1981); *Dobrowolsky v. Califano,* 606 F.2d 403, 407 (3d Cir. 1979).

**II.     DISCUSSION**

**A.     Sequential Evaluation Process Used by the Commissioner**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A).  Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in evaluating supplemental security income claims.  *See* 20 C.F.R. § 416.920; *Poulos,* 474 F.3d at 91-92.  This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity,[1] (2) has an impairment that is severe or a

---

[1] If the claimant is engaging in substantial gainful activity, the claimant is not disabled and the sequential evaluation proceeds no further. Substantial gainful activity is work that "involves doing significant and productive physical or mental duties" and "is done (or intended) for pay or

combination of impairments that is severe,[2] (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment,[3] (4) has the residual functional capacity to return to his or her past work and (5) if not, whether he or she can perform other work in the national economy. *Id.* As part of step four the administrative law judge must determine the claimant's residual functional capacity. *Id.*[4]

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. *See* Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2,

---

profit." 20 C.F.R. § 416.910.

[2] The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. § 416.920(c). If a claimant has no impairment or combination of impairments which significantly limits the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. *Id.* If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. § 416.920(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process. 20 C.F.R. §§ 416.923 and 416.945(a)(2). An impairment significantly limits a claimant's physical or mental abilities when its effect on the claimant to perform basic work activities is more than slight or minimal. Basic work activities include the ability to walk, stand, sit, lift, carry, push, pull, reach, climb, crawl, and handle. 20 C.F.R. § 416.945(b). An individual's basic mental or non-exertional abilities include the ability to understand, carry out and remember simple instructions, and respond appropriately to supervision, coworkers and work pressures. 20 C.F.R. § 416.945(c).

[3] If the claimant has an impairment or combination of impairments that meets or equals a listed impairment, the claimant is disabled. If the claimant does not have an impairment or combination of impairments that meets or equals a listed impairment, the sequential evaluation process proceeds to the next step.

[4] If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

5

1996). A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule. The residual functional capacity assessment must include a discussion of the individual's abilities. *Id*; 20 C.F.R. § 416.945; *Hartranft,* 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

B.   **Plaintiff's Background and the ALJ's Decision**

Plaintiff was born on December 20, 1958 and was 50 years old at the time of the alleged disability onset date, which is defined as an individual closely approaching advanced age. 20 C.F.R. § 404.1563. She has a high school education, and at the time of the alleged onset date, was working part-time as a personal caregiver. In this role, Plaintiff performed household chores such as laundry, washing dishes, preparing meals and assisting her client in and out of the shower. She would also drive her client to doctors' appointments and stores. Prior to her part-time caregiver job, Plaintiff was employed as a receptionist at a dental office, however she was terminated because she could not perform the tasks of her job in an efficient manner, despite being given more intense training. Plaintiff's application for benefits followed.

Following a hearing, Administrative Law Judge ("ALJ") Daniel Meyers

determined that the Plaintiff was not disabled and therefore not entitled to disability benefits or disability insurance benefits. We shall hereafter summarize the ALJ's findings and decision.

At step one of the sequential evaluation process, the ALJ determined that the Plaintiff had not engaged in substantial gainful activity since November 20, 2009, the alleged onset date of the Plaintiff's disability. (ALJ Meyers' Decision, dated March 2, 2011 (hereinafter "Meyers Decision"), p. 4).  At step two of the evaluation process, ALJ Meyers concluded that Young has the following severe impairments: Bipolar Disorder, Type II Diabetes, Hypertension, Chronic Fatigue and Fibromyalgia.  At step three of the process, ALJ Meyers found that the Plaintiff's impairments did not or in combination meet or equal a listed impairment.  The Plaintiff does not dispute any of these findings by the ALJ.

At step four of the sequential process, ALJ Meyers determined that Young has the residual functional capacity ("RFC") to perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b) on a full time basis.  (Meyers Decision, p. 6).  The ALJ also determined that she is limited to unskilled work, and understanding, remembering and carrying out simple instructions and making simple judgments.  The ALJ further found that Young's attention and concentration is limited to 85% of the work day and that she requires an

environment that contains only occasional changes to the work routine. (Meyers Decision, p. 6). In setting Young's RFC, the ALJ reviewed the medical records and considered all symptoms and the extent to which the symptoms could reasonably be accepted as consisted with the objective medical evidence and other evidence. In arriving at this RFC, the ALJ found that Young's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but found that her statements concerning the intensity, persistence, and limiting effects of the symptoms are not credible to the extent they were inconsistent with the medical records. (Meyers Decision, pp. 5-6). Young argues that the ALJ failed to address her chronic fatigue in setting her RFC and that the ALJ's findings that she could retain concentration for 85% of the workday is not supported by substantial evidence.

At step five, the ALJ found that, based on Young's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. The ALJ based this determination on the testimony of the vocational expert at the hearing. Young argues that the ALJ did not give appropriate weight to the opinion of Dr. Potluri, Young's treating psychiatrist, who asserted that Young could not work two to three workdays per month and that the ALJ erred by giving great weight to the State agency medical reviewer.

We shall now turn to a review of the ALJ's findings pursuant to the "substantial evidence" standard of review as set forth hereinabove.

**C.   Analysis**

The issues raised by Plaintiff in her appeal can be separated into two categories.  First, Plaintiff contends that the ALJ set her RFC without regard for her chronic fatigue condition, and that the ALJ's determination that Young could retain concentration for 85% of a workday was not supported by substantial evidence.  Second, Plaintiff argues that the ALJ erred by according great weight to the State agency's medical reviewer while assigning limited weight to the Plaintiff's treating psychiatrist, Dr. Polturi.  We shall discuss each group in turn.

We find Plaintiff's contention that the ALJ did not consider her chronic fatigue when setting Young's RFC to be unavailing.  The ALJ's opinion references Young's chronic fatigue throughout (Meyers Decision, p. 3, 4, 7, 8, 10) and specifically considers the condition when discussing the reasoning behind the ALJ's RFC determination: "The <u>combination of the claimant's physical impairments supports the limitation to performing work at less than the full range of the light exceptional level.</u>"  (Meyers Decision, p. 10)(emphasis added).  Thus, we find that the ALJ's decision in this regard was supported by substantial evidence and shall be affirmed.

We further find that the ALJ's determination that Young could retain attention and concentration for 85% of the workday to be supported by substantial evidence. The ALJ undertook an exhaustive review of the medical records concerning the Plaintiff's bipolar disorder, and all other limitations, and determined that her attention and concentration must be limited to 85% of the workday when arriving at the Plaintiff's RFC. (Meyers Decision, pp. 6-10). This determination is supported by substantial evidence in the record, and thus shall be affirmed.

Finally, Young asserts that the ALJ failed to give appropriate weight to the opinion of her treating psychiatrist, Dr. Potluri and that the ALJ erred by giving great weight to the State agency medical reviewer, Dr. Salvatore. The Court of Appeals for this circuit has set forth the standard for evaluating the opinion of a treating physician in *Morales v. Apfel*, 225 F. 3d 310 (3d Cir. 2000). In relevant part it is as follows:

> A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." . . . The ALJ must consider the medical findings that support a treating physician's opinion that the claimant is disabled. In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility

10

judgments, speculation or lay opinion.

*Id.* At 317-318 (internal citations omitted). The administrative law judge is required to evaluate every medical opinion received. 20 C.F.R. § 404.1527(d). In the present case, ALJ Meyers specifically addressed the opinions of Drs. Potluri and Salvatore, as well as the credibility of Young.

The social security regulations specify that the opinion of a treating physician may be accorded controlling weight only when it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case. 20 C.F.R. § 404.1527(d)(2). Likewise, an ALJ is not obliged to accept the testimony of a claimant if it is not supported by the medical evidence. An impairment, whether physical or mental, must be established by "medical evidence consisting of signs, symptoms, and laboratory findings," and not just by the claimant's subjective statements. 20 C.F.R. § 404.1508 (2007).

In the matter *sub judice,* the ALJ appropriately considered the contrary medical opinions of the State agency medical reviewer together with the objective medical evidence, and concluded that the disability opinions rendered by Dr. Potluri were not adequately supported by the objective medical evidence. Specifically, ALJ Meyers gave limited weight to Dr. Potluri's assessments by

noting that "despite having a long term treating relationship with the claimant, Dr. Potluri's assessment is inconsistent with the clinical findings noted throughout the medical treatment records." (Meyers Decision, p. 8).  Our review of the record supports the ALJ's determination to give limited weight to Dr. Potluri's assessment opinions, inasmuch as they were contrary to other objective medical evidence in the record.  Moreover, the substantial evidence in the record supports the ALJ's finding that the State agency medical reviewer's opinion was entitled to great weight because the consultant was given the opportunity to review the longitudinal medical treatment records through February 2010 prior to assessing Young's functional limitations, and the consultant's opinion is consistent with clinical findings.  We see no error in the ALJ's methodology in this regard.

### III.   CONCLUSION

Our review of the administrative record reveals that the decision of the commissioner is supported by substantial evidence.  We will, therefore, pursuant to 42 U.S.C. § 405(g) affirm the decision of the Commissioner.

An appropriate Order will be entered.